1000

ESTATE OF ELLIS BRANSON RIDGWAY, DECEASED, CRAIG SAWYER RIDGWAY AND ELLIS BRANSON RIDGWAY, JR., EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70260. Filed March 4, 1960.

*James J. Cloran, Esq.*, for the petitioner.
*Edward L. Newberger, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* This case involves an estate tax deficiency of $104,-017.55, resulting from the inclusion in decedent's gross estate of property transferred in trust having a value of $205,698.57, at the date of decedent's death. Inclusion of this property was based upon section 811(c)(1)(B) of the 1939 Code as amended by section 207(a) of the Technical Changes Act of 1953.

All of the facts are stipulated and are incorporated herein by reference.

Craig Sawyer Ridgway and Ellis Branson Ridgway, Jr., are the executors of the Estate of Ellis Branson Ridgway, Deceased, who died August 13, 1953, domiciled in Chester County, Pennsylvania. On November 15, 1954, petitioner filed with the director of internal revenue, Philadelphia, Pennsylvania, the Federal estate tax return for the Estate of Ellis Branson Ridgway, Deceased, and paid the tax shown on said return of $243,874.22.

On September 25, 1930, Ellis Branson Ridgway (hereinafter referred to as decedent), executed a deed of trust in which he conveyed to the trustee certain property then having a value of $271,593.50. The income of the trust was payable to his wife, Louise Sawyer Ridgway, for her life and upon her death to decedent, if then living, for his life. Upon the death of both decedent and his wife, the trust income was payable to decedent's two sons during their lives and each son was given a testamentary general power of appointment over one-half of the trust principal, with a provision over in the event either son failed to exercise the power, or to the extent that such appointments were invalid.

Under the terms of the deed of trust, decedent reserved the following right:

at any time to make any change in the limitations herein contained with respect to the distributions of principal and income of this trust fund, provided that no

such appointment as to principal shall be in favor of the Grantor himself or of his estate. * * *

The trust is irrevocable in all other respects.

On September 25, 1930, Louise Sawyer Ridgway, decedent's wife, executed a deed of trust simultaneous with the execution of the above-described trust of decedent. The wife conveyed property then having a value of $309,353 to her trustee. Her trust was similar in all respects to that created by decedent on the same date, except that decedent was the primary income beneficiary for his life, and the grantor-wife was the secondary income beneficiary.

On October 15, 1930, decedent and his wife simultaneously executed supplemental deeds of trust amending their respective deeds of trust to provide for the distribution of trust principal in the event that both of their sons died without exercising their powers of appointment, or to the extent that such appointments were invalid, and without leaving issue surviving.

On May 6, 1944, decedent and his wife simultaneously executed instruments under which each renounced, surrendered, released, and relinquished the power to make any change with respect to the distribution of principal and income of the trust created by each on September 25, 1930, as amended on October 15, 1930, thereby making each trust irrevocable in all respects.

Louise Sawyer Ridgway died on September 9, 1951, and the decedent was receiving the income from both trusts at the time of his death.

The value as of the date of decedent's death of the property constituting the trust which he created on September 25, 1930, is $205,-698.57. The value as of the date of decedent's death of the property constituting the trust which his wife created on September 25, 1930, is $106,630.

Additional executors' commissions in the amount of $12,000 have been paid and will be allowed under the laws of the jurisdiction under which the decedent's estate is being administered.

Additional administration expenses in the amount of at least $2,479.12 have been paid and will be allowed under the laws of the jurisdiction under which the decedent's estate is being administered.

Respondent has included the sum of $205,698.57 in decedent's gross estate under section 811(c)(1)(B) of the Code of 1939, as amended by section 207(a) of the Technical Changes Act of 1953.[1] This sec-

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*　　　*　　　*　　　*　　　*　　　*　　　*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has

tion, as amended, is expressly inapplicable to transfers made before March 4, 1931. Respondent argues that within the intendment of section 811(c)(1)(B), as amended, an includible "transfer" took place on May 6, 1944, when decedent relinquished his power to amend the trust. The crucial question at issue is whether the "transfer" took place in 1930 or 1944.

The question presented is not novel. In *Estate of Robert J. Cuddihy*, 32 T.C. 1171 (1959), the decedent and his wife in 1926 set up simultaneous trusts, each in consideration of the other. Under the terms of decedent's trust, one-half the income was to be paid to his wife for life, and the other one-half was to be paid to his issue. Upon termination, the remainder was to be paid to the decedent's surviving issue. The trust was to continue until the death of two designated grandchildren, but was terminable in favor of the decedent's issue by the trustee with the consent of a majority in interest of the income beneficiaries. Decedent's wife and three sons were appointed trustees. The wife's trust contained practically identical provisions except that decedent was named as cotrustee and as beneficiary for life as to one-half of the trust income and the other one-half of the income during his life was to be paid to his issue. In 1941 the decedent and his wife each resigned as trustees. The wife died in 1944. In May 1946 the decedent released his right to consent to the termination of the trust created by his wife and on subsequent dates he released rights to corpus in both trusts and to income in the trust created by his wife. Realigning these trusts under the doctrine of *Lehman* v. *Commissioner*, 109 F. 2d 99 (C.A. 2, 1940), affirming 39 B.T.A. 17 (1939), certiorari denied 310 U.S. 637 (1940), we held that the decedent was to be regarded as the settlor of the trust nominally created by his wife. Once this had been done we had before us a situation wherein decedent was deemed to have conveyed property in trust in 1926, retaining the power to act in conjunction with others in terminating the trust, which termination would inure to the benefit of persons other than the decedent and a subsequent release of such right to consent to termination in 1946. Respondent argued in the *Cuddihy* case that the release of decedent's power in 1946 constituted the "transfer" which

---

at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

*     *     *     *     *     *     *

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

*     *     *     *     *     *     *

Subparagraph (B) shall not apply to a transfer made before March 4, 1931 ; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

placed the value of the trust in decedent's gross estate under section 811(c)(1)(B) of the Code of 1939. Petitioner maintained that the "transfer" spoken of in the statute was accomplished in 1926 when the trust was created and property conveyed thereto. In *Cuddihy*, after carefully analyzing the statute, legislative history, and case law, we held that the transfer occurred in 1926 within the meaning of section 811(c)(1)(B), even though such transfer was subject to certain powers in the decedent, in conjunction with others, to accelerate the economic benefits of the trust corpus.

In *Smith* v. *United States*, 139 F. Supp. 305 (Ct. Cl. 1956), the Court of Claims held where property had been conveyed in trust in 1923 by decedent who retained a power to revoke in conjunction with another, that no "transfer" within the meaning of section 811(c)(1)(B) took place until the trust became irrevocable in 1933 (the year in which the other person needed for revocation died). It is unnecessary for us, at this time, to analyze the *Smith* case since this has been done fully in *Cuddihy, supra*. Suffice it to say, we think that the meaning of the word "transfer" as used in section 811(c)(1)(B) has been correctly interpreted in the *Cuddihy* case, which carefully analyzed this phase of the estate tax law, and not in the *Smith* case which applied general gift tax principles to the particular gross estate section. See also 2 Mertens, Law of Federal Gift and Estate Taxation, sec. 20.06.

We hold, therefore, that our decision in *Cuddihy* is controlling and that decedent made a "transfer" in trust in 1930 and not in 1944. Section 811(c)(1)(B) is thus expressly inapplicable to the transfer herein. It is unnecessary for us to treat any arguments dealing with the applicability of the *Lehman* doctrine since such issue in this case relates solely to the amount includible in decedent's gross estate and would arise only if we were to hold the transfer includible.

Since the effect of certain executors' commissions and expenses of administration have yet to be determined,

*Decision will be entered under Rule 50.*