COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

ESTATE of Ellie G. CANFIELD, De-
ceased, Karl B. Smith, Jr., Adminis-
trator, C.T.A., Respondent.

No. 145, Docket 26870.

United States Court of Appeals
Second Circuit.

Argued March 7, 1962.

Decided June 25, 1962.

■■■■■■■■■■■■■■■■■■■■■■■■

L. W. Post, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

Ewing Everett, New York City (Stanley M. Moffat, New York City, on the brief) (Michael Loening, New York City, of counsel), for respondent.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is a petition for review of a Tax Court decision upholding the respondent estate's challenge to certain estate tax deficiencies asserted by petitioner.[1]

The material facts were stipulated and the Tax Court summarized them as follows:

"Ellie G. Canfield, deceased, herein referred to as decedent, was born on August 2, 1863, and died on January 24, 1955. At the time of her death and at all other times material to this case she was domiciled in and a resident of the State of New York.

"Decedent's husband, Francis D. Canfield, died on October 8, 1917. Decedent never remarried.

"On March 24, 1919, decedent, as grantor, and the Central Union Trust Company of New York and decedent, as trustees, executed a trust agreement whereby decedent transferred to the trustees certain securities described in a schedule attached to the trust instrument. The first clause of the trust instrument directed the trustee to invest and reinvest all corpus of the trust and to pay the income, after deducting proper charges incident to the execution of the trust, to decedent during her life.

"The second clause of the trust instrument gave to decedent a testamentary power of appointment of the corpus of the trust as follows:

"Upon the death of the party of the first part, to pay over the whole of the said trust fund to, or to hold the same in trust and for the benefit of, such person or persons and in such proportions and shares and upon such terms as the party of the first part, by her Last Will and Testament in writing, shall have appointed and directed.

"The third through the eighth clauses of the trust instrument provided for the disposition of the trust estate at decedent's death in the event she failed to exercise the power of appointment in her will. Generally, they provided for distribution of one-half of the trust estate outright to decedent's children surviving her and the issue of any deceased child, per stirpes, with the other one-half to be held in trust for the same beneficiaries during the lives of decedent's children surviving her. In the event decedent died without issue the trust estate was to be distributed to her brother and his issue.

"With the exception of the reserved testamentary power of appointment the instrument contained no provision authorizing or permitting decedent to alter or amend its terms in any manner and no provision authorized decedent or any other person to remove the trustees. The trust provided that upon the resignation, removal, or incapacity of the

---

1. 34 T.C. 978.
    We have jurisdiction under 26 U.S.C.A. § 7482.

trustees, the beneficiaries at such time had the right to nominate and appoint a successor trustee.

"On December 15, 1942, decedent executed and delivered to the Central Hanover Bank and Trust Company, a New York corporation, which was the corporate successor trustee to the Central Union Trust Company of New York, a written release of the testamentary power of appointment. The release provided that decedent irrevocably released, surrendered, and renounced the power of appointment granted to her under the aforesaid trust deed of March 24, 1919, including 'all of my right, title and interest whatsoever in said power of appointment.'

"The executors filed an estate tax return for the estate of Ellie G. Canfield on January 10, 1956, with the district director of internal revenue for the Upper Manhattan District of New York. * * *

"It is stipulated that if State law is applicable in any respect in these cases, such State law is that of New York.

" * * * In his notice of deficiency in estate tax liability respondent determined that—

"the corpus of the trust created by the decedent on March 24, 1919, reserving the income for her life and a general testamentary power of appointment, which power of appointment was released on December 15, 1942, forms a part of decedent's gross estate within the provisions of section 2036 of the Internal Revenue Code of 1954."

The ultimate legal issue raised by the petition is whether the corpus of the trust created by decedent is includable in her gross estate for estate tax purposes under Section 2036 of the 1954 Internal

Revenue Code. 26 U.S.C.A. § 2036. Because that provision exempts "transfers" made prior to March 4, 1931, we are called upon to decide whether the "transfer" here was made upon execution of the trust instrument in 1919 or in 1942 upon decedent's release of her general testamentary power of appointment over the corpus. Petitioner concedes decedent irrevocably surrendered legal title to the corpus when she executed the trust instrument. Nevertheless, he contends the "transfer" exempted by Section 2036 must be "completed" prior to March 4, 1931, an event which, in his view, did not occur until surrender of the testamentary power of appointment in 1942. Petitioner further contends that, prior to 1942, the power of appointment could have been exercised in favor of her estate or her creditors and left the entire corpus subject to the claims of creditors during decedent's lifetime.[2] This, petitioner asserts, is sufficient to establish the "incompleteness" of the "transfer" prior to 1942.

Respondent contends, on the other hand, the use of the word "transfer" in Section 2036 refers merely to the execution of the trust instrument and transfer of legal title, regardless of how "incomplete" it may be or what powers over corpus may have been reserved. The Tax Court followed its prior decisions [3] on this issue and held "the transfer to which the exemption provision refers is the transfer of legal title to the trust upon creation of the trust. * * * "[4] We affirm.

The present Section 2036 is the result of a series of Congressional enactments and judicial interpretations thereof which were followed almost immediately by further legislative revisions. Section 402(c) of the Revenue Act of 1918, 40 Stat. 1097, and Section 302(c) of the Act of 1926, 44 Stat. 70, provided that the value of a decedent's gross estate should be deter-

2. The rationale we adopt makes it unnecessary to determine the precise extent to which creditors might be able to reach the corpus under New York law.

3. Estate of Cuddihy, 32 T.C. 1171; Estate of Ridgway, 33 T.C. 1000, aff'd sub nom. Commissioner v. Ridgway's Estate, 291 F.2d 257 (3 Cir. 1961).

4. 34 T.C. 978, 985.

mined by including the value at the time of death of all property to the extent of any interest therein of which the decedent had made a transfer "in contemplation of or intended to take effect in possession or enjoyment at or after his death." Although it held a trust which the grantor could unilaterally revoke, thereby returning legal title to himself, was subject to the estate tax, Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S. Ct. 123, 73 L.Ed. 410 (1929), the Supreme Court construed these provisions narrowly. In May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), a trust was created which provided that the income was to be distributed to the settlor's husband for his life, then to the settlor for life, after which the corpus was to be distributed to the children. The Supreme Court held this not to be subject to the estate tax on the grounds that legal title was fixed by the trust and had passed from the settlor upon execution of the trust instrument. Since the settlor had transferred legal title, the Court reasoned, her estate did not have to account, for tax purposes, for the value of the corpus. The next year, on March 2, 1931, the Court handed down three *per curiam* decisions "upon the authority of May v. Heiner." Burnet v. Northern Trust Co., 283 U.S. 782, 51 S. Ct. 342, 75 L.Ed. 1412 (1931) affirming per curiam Commissioner of Internal Revenue v. Northern Trust Co., 41 F.2d 732 (7 Cir. 1930); McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931) reversing per curiam, Commissioner of Internal Revenue v. McCormick, 43 F.2d 277 (7 Cir. 1930); Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931) reversing per curiam Commissioner of Internal Revenue v. Morsman, 44 F.2d 902 (8 Cir. 1930).

The significance of these decisions was twofold. First, the retention of income for life by the settlor of a trust was not sufficient to classify it as a transfer intended to take effect in possession or enjoyment at or after death. Second, this held true even though there was a possibility of a reverter to the settlor or he retained a power to revoke in conjunction with any one of several beneficiaries.[5] The net effect, then, was that unless the settlor retained the power to return legal title to himself unilaterally, the formal transfer of title by the trust instrument was sufficient to avoid the estate tax laws even though a life interest in the income was retained.

The "bombshell" [6] effect of the *per curiam* decisions of March 2, 1931, was immediately apparent. The next day, March 3, Congress enacted a Joint Resolution, 46 Stat. 1516, amending Section 302(c) of the Act of 1926. As amended, that section provided in part:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * wherever situated * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom * * *."

This was intended to have, and had, the effect of overruling May v. Heiner, supra, and its progeny of March 2. It did not, however, operate retroactively but affect-

5. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938); McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931), reversing per curiam Commissioner of Internal Revenue v. Mc-Cormick, 43 F.2d 277 (7 Cir. 1930). See note 9, infra, and accompanying text.

6. Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 639–641, 69 S.Ct. 322, 93 L.Ed. 288 (1949).

ed only those "transfers" executed after passage of the Joint Resolution. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). Ultimately, this provision became Section 811(c) (1) (B) of the 1939 Code.

This was the situation for eighteen years, until the decision in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949). In that decision, the Court expressly overruled May v. Heiner, supra, with respect to its holding on reservations of income for life. Since May v. Heiner had already been overruled by the Joint Resolution as to post-March 3, 1931, "transfers," the sole effect of Church was to extend the new rule to pre-March 3, 1931, "transfers." Congressional reaction to the decision in Church was almost as swift as it had been to the decision in May v. Heiner. Fearful that many property arrangements consummated in reliance upon May v. Heiner would be unexpectedly subjected to taxation by Church, Congress passed the Technical Changes Act on October 25, 1949, 26 U.S.C.A. Int.Rev.Acts.

One of the principal purposes of this statute was to nullify Church and "restore the estate tax law to what it was prior to the Church opinion." [7] It provided that the value of decedent's gross estate should be determined by including the value at the time of death of all property:

"(a) (1) General rule.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of,

or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom;

\* \* \* \* \* \*

"(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811(c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

"(1) a transfer made prior to March 4, 1931; or

"(2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516.)"

Finally, in 1953, Congress extended the exemption to all "transfers" executed prior to March 4, 1931, regardless of when the decedent died. Section 2036, as it is today, reads as follows:

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference

---

7. Sen.Rep. No. 831, 81st Cong., 1st Sess. 7–9 (1949), U.S.Code Cong.Service 1949, p. 2180.

to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

"(b) Limitation on application of general rule.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)."

■■ We believe petitioner's contentions are supported by neither the legislative purpose nor the statutory language of these provisions. The principal congressional purpose in rendering the 1931 Joint Resolution prospective only and in nullifying the retroactive effect of Church was to protect settlors who relied upon May v. Heiner and related cases. Those decisions held that so long as the settlor could not revoke the trust unilaterally, thereby returning legal title to himself, the corpus was not subject to the estate tax.[8] Thus, in McCormick v. Burnet, supra, the corpus was to be returned to the settlor, who also had a life estate in the income, if she survived the beneficiaries, and the trust could in fact be revoked by the settlor acting in conjunction with one of three beneficiaries.[9] The Supreme Court, nevertheless, "upon the authority of May v. Henier," held this trust was not includable in the decedent's estate. Petitioner, therefore, is incorrect in at-

tempting to limit the effect of May v. Heiner to facts identical to those involved in that case. The underlying principle of that decision was that once legal title has been transferred to a trust and may not be returned to the settlor by his unilateral act, the estate tax laws are inoperative against the corpus. In the present case it is conceded that under New York law the grantor could not have formally revoked the trust and regained legal title to the corpus during her lifetime without the consent of all persons beneficially interested. We believe, therefore, the present trust was one which could have been established in reliance upon the principle of May v. Heiner and falls within the exemption of Section 2036(b). And, indeed, prior decisions seem to have assumed that a reserved power such as the one here would not subject a pre-1931 trust to the tax if it were released prior to, and not in contemplation of, death. Denniston v. Commissioner, 106 F.2d 925 (3 Cir. 1939).

■ Petitioner's contentions, moreover, are not supported by the statutory language. Presumptively, we should think, "transfer" must be read to mean the transfer of legal title to a trust without regard to the reservation of certain powers over the corpus. It was so interpreted prior to the Joint Resolution of 1931, and we believe it must be presumed, in the absence of any language in that enactment to the contrary, that meaning was retained.[10]

Furthermore, if we were to read in "complete and irrevocable" before the word "transfer" we would make nonsense of the Code. Thus, we would have "complete and irrevocable" transfers under which the settlor retains possession or enjoyment of, or the right to, the income from the property, Section 2036; "complete and irrevocable" transfers under

---

8. Compare Reinecke v. Northern Trust Co., supra, with McCormick v. Burnet, supra.

9. The trust in McCormick would terminate either upon the death of all the beneficiaries or upon written instructions to the trustee from the grantor and one of three

beneficiaries. In either event, the corpus was to return to the grantor, if living.

10. The tax could not have been imposed in Reinecke v. Northern Trust Co., supra, unless this were so, since the "transfer" there was wholly revocable.

which the settlor retains the right to designate those who shall possess or enjoy the property or income, Section 2036; "complete and irrevocable" transfers in which the settlor retains a reversionary interest, Section 2037; and, finally, "complete and irrevocable" transfers in which the settlor retains the right to alter, amend, revoke, or terminate the trust, Section 2038. Were we to read in the words "complete and irrevocable" before "transfer," therefore, each of these sections would become a contradiction in terms. These provisions were not drafted merely as general statements of policy, the courts being left to fill in the gaps interstitially. They were, in fact, drafted in a relatively precise fashion, and the language employed is based on several decades of experience made meaningful through the continual interplay of judicial interpretation and legislative revision. When Congress drafted Section 2036, it was aware of powers of appointment and the fact that settlors often surrendered them; and when it chose to refer to such transactions it employed specific language. See e. g., Section 2035 " * * * exercised or released a general power of appointment * * *." Under such circumstances, we feel constrained to follow the apparent meaning of the statutory language absent a determination of a conscious legislative policy to the contrary.

Petitioner contends there is such a policy in the long-standing principle that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed. * * *" Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930). That principle, while perhaps generally valid, is wholly inapposite in the context of the exemption for pre-March 4, 1931, transfers. The exemption was designed to render the May v. Heiner line of cases applicable to those transfers. And, as we have seen, May v. Heiner held refinements of title to be far more important than command over property. Moreover, it was the application of this very principle in Church which Congress overruled with the Technical Changes Act of 1949.[11]

We believe the view we take of the statute is supported by the decision in Commissioner of Internal Revenue v. Ridgway's Estate, 291 F.2d 257 (3 Cir. 1961). In that case, the decedent executed a deed of trust in 1930, the income payable to his wife for life, and then to the decedent for life, if living. The trust was irrevocable, except for a reserved power to make changes with respect to the disposition of principal or income, but not in favor of himself or his estate. The power was exercisable both during his lifetime and by testamentary instrument.[12] The decedent relinquished this power in 1944. The Court held, nevertheless, that the "transfer" was made in 1930 upon execution of the deed of trust. It noted that a contrary ruling would attribute a different meaning to "transfer" than it had in other parts of the same statute and that the May v. Heiner line of cases was principally concerned with placing formal legal title beyond the settlor's unilateral control. We agree with the decision and follow it here.[13]

11. The Commissioner has relied upon portions of various congressional reports relating to the legislation pertinent to this case. We have read them and have found nothing inconsistent with the result we reach. It is clear, however, that Congress desired at the minimum to exempt transfers which might have been consummated in reliance upon the principles underlying May v. Heiner and those decisions which followed it. The Commissioner's contentions, if accepted, would not effectuate that purpose.

12. The decedent in that case reserved the right "at any time to make any change in the limitations herein contained with respect to the distribution of principal and income of this trust fund, provided that no such appointment as to principal shall be in favor of the grantor himself or his estate * * *" 33 T.C. at 1000–1001.

13. Ridgway differs from our case in that the power of appointment could not be exercised in favor of the grantor's estate. But that factor does not serve to distin-

Petitioner relies heavily upon Smith v. United States, 139 F.Supp. 305, 134 Ct. Cl. 136 (1956) and Studebaker v. United States, 195 F.Supp. 841 (N.D.Ind.1961). In both cases, however, the trusts as originally executed were revocable by the settlor acting in conjunction with a person lacking a substantial adverse interest. This is in sharp contrast to the present case in which legal title was irrevocably committed. The rationale of Smith and Studebaker that these trusts could not have been drafted in reliance upon May v. Heiner, and thus fall outside the purpose of the exemption is, therefore, inapplicable. And to the extent the language of the opinion in either case is contrary to our ruling here, we decline to follow it. What result we would reach in a case involving a trust revocable by the settlor acting alone or in conjunction with a non-adverse party is a question we need not and do not decide.[14]

Petitioner has also relied upon certain decisions under the laws governing the taxation of gifts. Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 (1933); Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939); Rasquin v. Humphreys, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77 (1939). In each of these cases, the Court held that trusts for the benefit of named beneficiaries with certain powers to revoke or modify reserved to the settlor were not subject to the gift tax until the date of the surrender of the reserved powers. These cases, however, raise problems entirely different from those now facing us. For one thing, the Court was concerned with the possibility of double taxation arising from the tentativeness of the original transfer and the possibility of a change of heart on the part of the donor. For another, as the Tax Court noted in Estate of Cuddihy, 32 T.C. 1171 (1959), only a completed transfer can support the imposition of a gift tax while the estate tax attaches to whatever interest in the transferred property is retained by the decedent at his death. Moreover, "transfer" does not necessarily have the same meaning in the gift tax laws as it has in the estate tax provisions, and we are quite unwilling to say, particularly in the context of an exemption created to protect those who may have relied on subsequently overruled case-law, every transfer which is not a gift is automatically part of a decedent's gross estate.[15]

The decision of the Tax Court is, therefore, affirmed.

guish the two cases since it goes neither to the irrevocable commitment of legal title to the trust nor to the meaning of the word "transfer" as used in the relevant portions of the Code.

14. On the one hand, the expressly stated congressional purpose to protect those who may have relied on May v. Heiner, would seem to support imposition of the tax where legal title is not irrevocably placed in a trust. On the other hand, a literal interpretation of the word "transfer" as used in the Code would lead to the conclusion that all pre-1931 "transfers," regardless of retained powers, are exempted. This would also obviate the necessity of a 1962 court determining how a 1931 court would rule in a particular case and would thereby increase the certainty that the legislative purpose would be effectuated.

15. In the Tax Court, the Commissioner sought as an alternative to bring the transaction within the gift tax. The Court held that special relief provision in Section 1000(e) prevented imposition of the gift tax, and the Commissioner has not pressed his appeal from that decision. To accept the contention that the gift and estate tax schemes are complementary in each and every respect would be little different than saying the purpose of the relief provision of § 1000(e) is to subject the present transaction to the estate, rather than gift tax. We find no support for this contention but believe the Commissioner must establish taxability under the estate laws independently.