**ESTATE of Fanny Sicher COHN, Deceased, Lillian Friedmann and Warren S. Davidson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Jan. 7, 1966.

Sandow Holman and Davidson, Sicher & Levy, New York City, for plaintiffs; George B. Levy, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, for the United States; Grant B. Hering, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

In this action the plaintiffs seek to recover certain estate taxes. The case was tried before the court without a jury. The facts were stipulated.

After examining the stipulations, the pleadings, the briefs and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The decedent, Fanny Sicher Cohn, died on September 8, 1960. Her Last Will and Testament was admitted to probate in the Surrogate's Court, New York County, and on September 29, 1960 Letters Testamentary were issued by the said court to the plaintiffs, Lillian Friedmann and Warren S. Davidson, as co-Executors. Said Lillian Friedmann and Warren S. Davidson continue to act in such capacity.

2. On or about November 17, 1961, the plaintiffs, as Executors of the estate of Fanny Sicher Cohn, filed a federal estate tax return and paid to the District Director of Internal Revenue, Manhattan, New York, the sum of $3,789.75, the amount of tax shown to be due on the return as filed.

3. By letter of September 11, 1962, the District Director proposed certain adjustments to the federal tax return which would result in a deficiency in the estate tax of $88,941.84.

4. The plaintiffs executed a waiver of restrictions on assessment and collection of the proposed deficiency, and on or about February 27, 1963 paid to the District Director an additional estate tax of $88,941.84, plus interest thereon of $6,522.40, or a total of $95,464.24.

5. On or about March 12, 1963, the plaintiffs filed with the District Director a claim for refund in the amount of $95,464.24.

6. On or about June 25, 1963, the plaintiffs filed with the District Director an "amended" claim for refund of additional estate tax of $7,779.30, allegedly arising out of the allegedly erroneous omission of deductions for certain administration expenses.

7. On March 31, 1930, the decedent, Fanny Sicher Cohn, as grantor, created an *inter vivos* trust by entering into a deed of trust and transferring to the named trustee certain assets listed in a

schedule annexed to the deed of trust. A copy of said deed of trust was attached to the stipulation of facts and marked Exhibit 4.

8. Article II of the deed of trust provided in part:

"II. Out of the net income, as a first charge thereon, and also, if ever and so far as necessary, out of the principal, to pay to FANNY for and during the term of her lifetime, on the first day of each and every month, commencing with the payment on May 1, 1930 the sum of FIVE HUNDRED DOLLARS ($500)."

Various payments of the residue, if any, of the annual net income of the trust were provided for in the agreement.

9. • Article X of the said trust agreement was as follows:

"FANNY hereby expressly reserves and retains to herself the right, *as hereinafter expressly limited,* at any time or times during her lifetime (1) to revoke, cancel and annul, in whole or in part, this Deed of Trust and the trusts and interests in property hereby created, and/or (2) to alter, annul or modify any one or more of the provisions of this Deed of Trust.

"The foregoing rights of revocation and/or modification shall be exercised by notice in writing, signed and acknowledged by FANNY in the manner then prescribed for deeds of New York realty, and delivered to the then acting TRUSTEE or TRUSTEES. But such notice of attempted revocation and/or modification shall be *ineffectual and void* UNLESS *approved,* in the manner and within the time hereinafter prescribed, by (1) said LOUISE LOTH SICHER *and* said DUDLEY F. SICHER, if both be then living, or (2) the survivor of said LOUISE LOTH SICHER and DUDLEY F. SICHER *and* also the then acting EXECUTOR or all the then acting EXECUTORS of that one of them who shall have died, or (3) after the death of both said LOUISE LOTH SICHER and said DUDLEY F. SICHER, by the respective then acting executor or all the then acting EXECUTORS of each of them *and* also each TRUSTEE (one or more) who may be then acting as TRUSTEE under this DEED OF TRUST.

"Such approval shall be in writing and duly acknowledged by each signer in the manner then prescribed for deeds of New York realty, and shall be delivered to each then acting TRUSTEE under this Deed of Trust, either simultaneously with FANNY'S notice of revocation or modification, so approved, or within not more than sixty (60) days after delivery of FANNY'S notice of revocation or modification to every then acting TRUSTEE.

"Any such notice of revocation shall, moreover, direct the disposition to be made of the trust principal and/or income or of the portion affected by such revocation; and the TRUSTEE, and/or his successor or successors, shall make, execute and deliver such instruments, if any, and make such transfers of property, as may be necessary or proper to carry such revocation into effect.

"No person shall have any right, interest or estate under this Deed of Trust except subject to the proper revocation, alteration or modification thereof by FANNY pursuant to the foregoing limiting provisions of this Clause X."

10. On June 13, 1957, the decedent, Fanny Sicher Cohn, as grantor, executed a modification of the *inter vivos* trust. It appears by said modification that the decedent's mother, Louise Loth Sicher, died on December 24, 1945, leaving a Last Will and Testament dated June 24, 1930, which was duly admitted to probate by the Surrogate's Court, County of New York, on January 10, 1946 and letters testamentary thereunder issued to Dudley F. Sicher as sole executor and

that such letters at that time had not been revoked.

In the modification, said Fanny Sicher Cohn directed that all income of the trust be paid to her for life, and changed the provisions for invasion of the trust principal, the provisions covering the payment of principal upon her death, and the provisions covering the succession of the trustee. Certain administrative changes were also made. The agreement stated:

> " * * * one of the chief reasons for executing this modifying instrument is to remove *all* the original restrictions on the discretionary power to draw upon principal, for FANNY'S benefit, with the now major objective of assuring for FANNY during her whole lifetime maximum comfort and care and an appropriate scale of living." (Modification, par. 3)

Dudley F. Sicher, individually and as executor of the Will of Louise Loth Sicher, deceased, approved this modification agreement.

The modification made no change in Article X of the deed of trust, which Article was in effect at the death of the grantor, Fanny Sicher Cohn.

11. Dudley F. Sicher, brother of the decedent, died on November 15, 1957.

12. At the time of the death of Fanny Sicher Cohn on September 8, 1960, the sole successor-trustee of the *inter vivos* trust was Warren S. Davidson, and the acting co-Executors of the estate of Dudley F. Sicher were the decedent herein and Warren S. Davidson.

13. The fair market value of the assets of the *inter vivos* trust on September 8, 1960 was $322,822.72.

14. Expenses, totaling $17,293.20, were incurred in the administration of the *inter vivos* trust after the death of the decedent and were not claimed as deductions on the federal estate tax return. These expenses were occasioned by the death of the decedent (i. e., Fanny Sicher Cohn) and were incurred in settling the said decedent's interest in the property and vesting good title to the property in the beneficiary. The expenses were as follows:

(a) Trustees' principal paying commissions ........$ 4,494.80

(b) Legal fees ..............11,500.00

(c) Accounting fees ........ 1,125.00

(d) Documentary stamps .... 173.40

$17,293.20

All parties have stipulated that should the corpus of the trust herein be held includible in decedent's gross estate, the estate is entitled to a deduction in the sum of $17,293.20 occasioned by the expenses listed above, in spite of the fact that the trust has already deducted a like amount on its income tax return for the appropriate year.

OPINION

Plaintiffs seek a refund of estate tax due to the allegedly erroneous inclusion of the corpus of the trust described above in the gross estate of decedent. Plaintiffs argue that since the deed of trust was executed prior to March 4, 1931, the limitation contained in Section 2036(b), Internal Revenue Code of 1954, applies. Section 2036 at all times relevant here provided:

> "§ 2036. Transfers with retained life estate
>
> (a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

"(b) Limitation on application of general rule.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)."

It is plaintiffs' contention that the limitation of Section 2036(b) applies to all relevant sections of the Internal Revenue Code of 1954 under which the corpus of the trust might be includible in the gross estate.

The government, on the other hand, contends that the corpus is includible under Section 2038, Internal Revenue Code of 1954. Section 2038 at all times relevant here in part provided:

"§ 2038. Revocable transfers

"(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from

what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

"(2) Transfers on or before June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

"(b) Date of existence of power.—For purposes of this section, the power to alter, amend, revoke, or terminate shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even through the alteration, amendment, revocation, or termination takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose, if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death."

Under Article X of the trust agreement, above quoted, the decedent clearly retained the power to "revoke, cancel and annul" the trust in whole or in part, at any time, or to "alter, annul or modify" the trust agreement. Nothing in the modification agreement executed on June 13, 1957 altered Article X of the original agreement of March 31, 1930.

There is no doubt that at the time of the death of Fanny Sicher Cohn on September 8, 1960 the enjoyment of the trust estate was subject to a possible change through the exercise of a power in such decedent (in conjunction with others) to alter, amend or revoke under the specific terms of Section 2038, Internal Revenue Code of 1954. The only question is as to the effect of Section 2036(b) on Section 2038.

Section 2038 originated as Section 302(d) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 304. Prior to 1924, the revenue statutes were silent with regard to retained powers of modification or revocation. Section 302(d) provided:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth \* \* \*."

The first specific provision with regard to retained life interests was contained in a Joint Resolution of Congress enacted on March 3, 1931. This Joint Resolution, c. 454, 46 Stat. 1516, amended the first sentence of Section 302(c) of the Revenue Act of 1926 to provide that the gross estate shall include the value of property:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death* (1) *the possession or enjoyment of, or the income from, the property or* (2) *the right to designate the persons who shall possess or enjoy the property or the income therefrom;* except in case of a bona fide sale for an adequate and full consideration in money or money's worth." (Portion italicized is the new language)

Throughout the history of the two sections, the courts have refused to treat the sections as mutually exclusive. Rather, they have treated the sections as independent, but overlapping, so that both sections could under some circumstances apply to the same transaction. The possible applicability of one section has been no barrier to the application of the other. Thus, in Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S. Ct. 70, 80 L.Ed. 62 (1935); Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836, cert. denied 293 U.S. 569, 55 S.Ct. 80, 79 L.Ed. 668 (1934); and Commissioner of Internal Revenue v. Chase National Bank, 82 F.2d 157 (2nd Cir.), cert. denied 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407 (1936), the courts included in the gross estate the corpus of pre-1931 trusts under the predecessors of Section 2038, in spite of the fact that life interests had been retained by the grantor in each case. It is true that at the time these cases were decided, the question of retroactivity of the Joint Resolution of March 3, 1931 had not been determined, so that it may not have seemed of great moment

that these trusts were held taxable under the section dealing with retained powers to alter, amend or revoke. The question of retroactivity was settled in Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938), where it was held that the Joint Resolution was not retroactive to transfers made prior to March 4, 1931.[1] Thereafter, the Second Circuit in Adriance v. Higgins, 113 F.2d 1013 (2nd Cir. 1940) held that the corpus of a pre-1931 trust was includible in the estate of the grantor, where the grantor had retained a life interest in the income of the trust, as well as a power to appoint by will the beneficiaries of the corpus. Although both the power of appointment and the life interest were specifically mentioned in the Joint Resolution, which the Supreme Court in the Hassett case, supra, had held not to be retroactive to pre-1931 trusts, the corpus was held includible under the provisions providing for inclusion when there are retained powers to alter, amend, or revoke. Thus, the overlapping independence of the predecessors of the two sections herein (i. e., Sections 2036 and 2038, Internal Revenue Code of 1954) is clear.

■ Moreover, an examination of the legislative history of subsection (b) of Section 2036 of the Internal Revenue Code of 1954 convinces me that Congress did not intend by enacting that subsection to limit the application of Section 2038, or to make Sections 2036 and 2038 mutually exclusive.[2] Section 2036(b) originated as the Act of October 25, 1949, c. 720, 63 Stat. 891, 894 (Technical Changes Act of 1949). Slight modifications were made by c. 512, 67 Stat. 615,

623 (Technical Changes Act of 1953), before it was reenacted in the Internal Revenue Code of 1954 as Section 2036 (b). The 1949 enactment, subsequently retained, was occasioned by a decision of the Supreme Court holding that pre-1931 trusts with retained life interests were includible solely for that reason in the gross estate of the grantor. Commissioner of Internal Revenue v. Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949). The route which the Supreme Court took was not to overrule Hassett v. Welch, supra, but rather to circumvent it by overruling an older case, May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930). The Technical Changes Act of 1949 sought to restore the state of the law as it existed under Hassett v. Welch.[3]

That such was the sole intent of Congress and that the purpose of the statute was not to limit the application of any section other than the predecessor of Section 2036 (Section 811(c) of the Internal Revenue Code of 1939), is amply demonstrated by an examination of the Report of the Finance Committee which accompanied the bill in the Senate, S. Rep.No.831, 81st Cong., 1st Sess., August 3, 1949, U.S.Code Congressional Service, p. 2172. There, at page 8, an example with reference to a pre-1931 trust is discussed by the Committee. The discussion concludes:

"* * * Hence, the property is not includible in the gross estate unless the transfer was made in contemplation of death or unless the property falls within some other subdivision of section 811.[4]

---

1. Actually, the case involved the then Section 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 279, which "re-enacted the substance of the Joint Resolution with but slight verbal differences." 303 U.S. at 307, 58 S.Ct. at 562.

2. By saying that Congress did not intend the sections to be mutually exclusive we mean that Congress did not intend to prescribe a rule that either one section or the other might apply to a given transaction, but never both.

3. The 1949 Act applied, however, only to the estates of decedents dying after February 10, 1939 and before January 1, 1951. The letter limitation was removed in 1953. The former was removed in 1953 as well, with regard to cases then still in the process of litigation.

4. The predecessor of present Section 2038 was just such a subdivision of Section 811, Section 811(d).

"The amendment made to section 811(c) by this section of the bill does not, however, similarly change the estate-tax treatment of a transfer made before March 4, 1931, in case the decedent retained both a life estate and some other right or interest in the transferred property. * * *"

See also Conference Rep.No.1412, 81st Cong., 1st Sess., October 11, 1949. Later reenactments show no change of purpose. See, e. g., S.Rep.No.685, 83rd Cong., 1st Sess., July 28, 1953, U.S.Code Congressional and Administrative News, p. 2423.

Plaintiffs argue, however, that the statute was designed to protect those who might have relied on May v. Heiner, supra, and three per curiam decisions which followed it, Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931), McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931), and Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931). It is hard for this court to see how any intelligent reliance could have been placed on these cases by the grantor herein. In three of the four cases the grantor died before Section 302(d) of the Revenue Act of 1924, dealing with retained powers of modification or revocation, became effective. In the fourth case, Morsman v. Burnet, the government urged only Section 302(c) as the basis of taxability.[5] No consideration was given to any other section in any of the papers before the court.[6] And the Supreme Court addressed itself only to that section, saying: "The question in this case is that of the construction of section 302(c) of the Revenue Act of 1924 * * *." 283 U.S. 783, 51 S.Ct. 343. Thus, these cases cannot be considered to have passed on the taxability, under the section here involved, of a trust in which a life estate is retained in conjunction with a power of modification or revocation. These cases have no bearing on Section 302(d), Revenue Act of 1924, or on Section 2038, Internal Revenue Code of 1954.

I conclude, then, that Sections 2036 and 2038 are independent and not mutually exclusive. This was the conclusion of the Third Circuit in Florida Nat'l Bank of Jacksonville, Fla. v. United States, 336 F.2d 598 (3rd Cir. 1964), cert. denied 380 U.S. 911, 85 S.Ct. 895, 13 L.Ed.2d 797 (1965). In that case, the court, per Kalodner, J., held a trust includible under Section 2038 although it was urged that it came within the exception of Section 2036(b). In reversing the district court, the Third Circuit said, 336 F.2d 598, 601:

"The text writers, and the Treasury Regulations, are in agreement that sections 2036 and 2038 'overlap'; that accordingly, the value of a trust may be includible in a decedent's gross estate under either or both sections, and that they are not mutually exclusive."

Any attempt to distinguish that case on the basis that the power there was unilateral, must fail in light of the explicit words of Section 2038 providing for inclusion when a power is held in conjunction with any person. Language quoted by plaintiffs from Commissioner of Internal Revenue v. Canfield's Estate, 306 F.2d 1 (2nd Cir. 1962) and Savage v. United States, 331 F.2d 678 (2nd Cir. 1964), dealing with the unilateral power to revoke the trust, does not help the plaintiffs' case here. In both of the cases from which the language was quoted, tax liability was premised upon Section 2036, not upon Section 2038 as herein. In both, it appears that Section 2038 was unavailable as a basis for taxation, since any power to alter, amend, or revoke had long since ceased to be effective. The inquiry in both cases was whether a "transfer" had taken place prior to March 4, 1931, thus bringing Section 2036(b) into effect and precluding taxation under Section 2036(a), as

---

5. Record on Appeal in the Supreme Court of the United States, Brief for Respondent, P. 2, pp. 7-9, 11-36.

6. See generally Ibid.

specifically provided in the statute. Thus, all the discussion in these cases dealing with unilateral power to revoke was directed toward a determination of the presence of a "transfer" prior to March 4, 1931. Such a determination was sought only in order to measure taxability under Section 2036. The same may be said of language speculating upon a broader exemption applying to all pre-1931 transfers regardless of unilateral power to revoke: [7] this speculation as well applied only to taxability under Section 2036. Thus, these two cases and certain language contained therein are directed at the question of the presence or absence of a transfer under Section 2036(b), a question quite distinct from the question whether Section 2036 (b) applies to Section 2038 so as to preclude taxation under the latter Section where otherwise applicable. These cases, then, do not support plaintiffs' contention. Nor do they weaken the conclusion reached by the Third Circuit in the Florida Nat'l Bank case, supra.

 Moreover, in speaking generally of the sections involved herein, the court in Canfield, supra, said:

> " * * * They were, in fact, drafted in a relatively precise fashion, and the language employed is based on several decades of experience made meaningful through the continual interplay of judicial interpretation and legislative revision. * * * " 306 F.2d 1, 7.

I hold that the limitation of Section 2036(b) does not apply to Section 2038, and that corpus of this trust was properly included in the gross estate of the grantor under Section 2038.

## CONCLUSIONS OF LAW

1. Jurisdiction is conferred upon the court by 28 U.S.C. § 1346(a) (1).

2. The corpus of the trust herein is properly includible in the decedent's gross estate under Section 2038, Internal Revenue Code of 1954 by reason of the powers reserved to the grantor in Article X of the deed of trust.

3. Pursuant to stipulation, in light of Conclusion of Law No. 2 above, the estate is entitled to a deduction in the sum of $17,293.20 for expenses pursuant to Section 2053, Internal Revenue Code of 1954, although a like deduction has already been taken for income tax purposes by the trust.

No costs are assessed against either party hereto.

Settle judgment on notice pursuant hereto.

---

7. See 306 F.2d 1, 8 n. 14, quoted in part in 331 F.2d 678, 680 n. 1.