The **FLORIDA NATIONAL BANK OF JACKSONVILLE, FLORIDA, and Herbert T. Ballard, Jr., as Co-Executors of the Estate of Herbert T. Ballard, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. 30473.**

United States District Court
E. D. Pennsylvania.

Oct. 2, 1963.

Wright, Spencer, Manning & Sagendorph, by Samuel L. Sagendorph, Norristown, Pa., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Dept of Justice, Edward S. Smith, David A. Wilson, Jr., John M. Hammerman. Attys., Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is an action for the recovery of estate taxes paid by the plaintiffs, executors of the Estate of Herbert T. Ballard, hereinafter referred to as the decedent, who died December 15, 1956.

On February 20, 1929, decedent had created an inter vivos trust which contained, inter alia, the following language:

"Ballard *has irrevocably parted with the title* to the securities and property constituting the subject matter of this trust estate, but reserves to himself the right at any time *to make any change in the limitations* herein contained with respect to the distribution of principal and income of this trust fund, *provided that no such appointment shall be in favor of himself or of his estate.* Ballard further reserves the right at any time, upon thirty days written notice to the Trustee, to cause the resignation of the Trustee, which shall then state a final account of its management of the trust estate and shall deliver all the assets composing the trust estate to such other Trustee as Ballard may designate, and shall thereupon be released and discharged from all liability as trustee hereunder. In all other respects this Deed of Trust is irrevocable." (Emphasis supplied)

It is stipulated and agreed that the Court has jurisdiction of the issue and that all necessary preliminary steps have been taken by the plaintiffs prior to the determination of the litigation by us.

The Government included in the gross estate of the decedent the value of the trust under § 2038 of the Internal Revenue Code of 1954 on the theory that the decedent retained, by the above language of the trust, the power to alter, amend

or revoke it. Section 2038 provides as follows:

"§ 2038. Revocable transfers.

"(a) *In general.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) *Transfers after June 22, 1936.*—

\* \* \* \* \* \*

"(2) *Transfers on or before June 22, 1936.*—To the extent of any interest therein of which the decedent has at any time made a transfer \* \* \*, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

"(b) *Date of existence of power.*—For purposes of this section, the power to alter, amend, revoke, or terminate shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, revocation, or termination takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interest, which would have been excluded from the power if the decedent had lived, and for such purpose, if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death." (26 U.S.C.A. § 2038)

Plaintiffs argue that the defendant Government erred in this respect since the transfer of title to the corpus of the trust brings it under the provisions of § 2036 of the Code, as enacted in 1954. Section 2036 reads as follows:

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

"(b) Limitation on application of general rule.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)."

Both parties to this action have framed the legal question differently, but the single issue before us is whether or not this trust comes under § 2036 or § 2038. We hold as a matter of law and for the reasons hereinafter set forth that § 2036 is applicable and the value of the trust

was improperly included in the gross estate. Furthermore, the applicability of § 2036 precludes taxation under § 2038.

In their brief and argument plaintiffs rely on a number of cases but principally on C. I. R. v. Ridgway's Estate, 291 F.2d 257 (1961), from our Third Circuit opinion by Circuit Judge Staley, and C. I. R. v. Canfield's Estate, 306 F.2d 1 (1962), opinion by Circuit Judge Marshall for the Second Circuit. We hold that these cases are authority for the general proposition that § 2036, as presently enacted and which was in effect at the time of the decedent's death, avoids taxation of the trust fund as a part of the gross estate when the "transfer" of legal title took place prior to 1931.

The Government's reply brief attempts to distinguish these cases and says that the plaintiffs have ignored facts which appear in the case. With this we completely disagree. The Government would have us believe that in the Ridgway case the legal conclusions reached by Circuit Judge Staley were determined by the fact that the settlor in that case had in 1944 relinquished his power to alter or amend the trust. As we read the opinion, this had no bearing on the outcome whatsoever. Also, in reply to the argument based on Canfield's Estate, they would have us believe that to reach his result Circuit Judge Marshall was influenced by the fact that the decedent therein had relinquished her power to alter or amend in 1942, having died in 1945, and we find that argument equally fallacious.

It would serve no purpose here to repeat legislative history of this enactment and the Supreme Court decisions [1] so ably and comprehensively set forth in both of the above opinions. In the Ridgway case, decedent executed a deed of trust on December 25, 1930. The trust was irrevocable except for power he expressed in reserve to make changes with respect to the distribution of principal or income but not so as to favor himself or his estate. Precisely the same facts appear in our case. The decedent Ridgway died in 1953, having relinquished the above power in 1944. In the Canfield case, decedent executed a trust agreement on March 24, 1919, reserving to the settlor a testamentary power of appointment. In December of 1942 the decedent released the testamentary power of appointment, but, as we have said, in neither Ridgway nor Canfield does it appear that the later release of the original power had any bearing on the ultimate result. In both cases the liability for tax was determined by the "transfer" prior to 1931.

In the Canfield case Judge Marshall says, referring to Ridgway and agreeing with Circuit Judge Staley:

"* * * The power was exercisable both during his lifetime and by testamentary instrument. The decedent relinquished this power in 1944. The Court held, nevertheless, that the 'transfer' was made in 1930 upon execution of the deed of trust. It noted that a contrary ruling would attribute a different meaning to 'transfer' than it had in other parts of the same statute and that the May v. Heiner line of cases was principally concerned with placing formal legal title beyond the settlor's unilateral control. * * *" (306 F.2d p. 7).

In both cases the Commissioner held that the trust fund was taxable. In both cases the Tax Court overruled the Commissioner and in both cases the Circuit Court upheld the decision of the Tax Court. As stated 291 F.2d at page 259 in the Ridgway case:

"The Commissioner advances an elaborate argument in which he intertwines judicial decisions with

---

[1]. Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929); May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930); McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931); § 402(c) of the Revenue Act of 1918, 40 Stat. 1097, § 302(c) of the Act of 1926, 44 Stat. 70, Joint Resolution of Congress, dated March 3, 1931, 46 Stat. 1516, Technical Changes Act, October 25, 1949, 26 U.S.C.A., Int.Rev.Acts, and the Revenue Codes of 1939 and 1954.

statutory enactments and legislative history."

The same could be applied here and in the Canfield case.

As to the relationship from a taxing standpoint of § 2036 and § 2038, we find it clearly expressed by Circuit Judge Marshall on pages 6 and 7 of 306 F.2d at follows:

"Petitioner's contentions, moreover, are not supported by the statutory language. Presumptively, we should think, 'transfer' must be read to mean the transfer of legal title to a trust without regard to the reservation of certain powers over the corpus. It was so interpreted prior to the Joint Resolution of 1931, and we believe it must be presumed, in the absence of any language in that enactment to the contrary, that meaning was retained.

"Furthermore, if we were to read in 'complete and irrevocable' before the word 'transfer' we would make nonsense of the Code. Thus, we would have 'complete and irrevocable' transfers under which the settlor retains possession or enjoyment of, or the right to, the income from the property, Section 2036; 'complete and irrevocable' transfers under which the settlor retains the right to designate those who shall possess or enjoy the property or income, Section 2036; 'complete and irrevocable' transfers in which the settlor retains a reversionary interest, Section 2037; and, finally, 'complete and irrevocable' transfers in which the settlor retains the right to alter, amend, revoke, or terminate the trust, Section 2038. Were we to read in the words 'complete and irrevocable' before 'transfer,' therefore, each of these sections would become a contradiction in terms. These provisions were not drafted merely as general statements of policy, the courts being left to fill in the gaps interstitially. They were, in fact, drafted in a relatively precise fashion, and the language employed is based on several decades of experience made meaningful through the continual interplay of judicial interpretation and legislative revision. When Congress drafted Section 2036, it was aware of powers of appointment and the fact that settlors often surrendered them; and when it chose to refer to such transactions it employed specific language. See e. g., Section 2035 '* * * exercised or released a general power of appointment * * *.' Under such circumstances, we feel constrained to follow the apparent meaning of the statutory language absent a determination of a conscious legislative policy to the contrary." (306 F.2d 1)

Accordingly, we find that the plaintiffs are entitled to a refund and direct that a proper order be submitted.