ESTATE OF JAMES L. THOMSON, DECEASED, HARTFORD NATIONAL BANK AND TRUST COMPANY AND A. LINDSAY THOMSON, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF ADELAIDE L. THOMSON, DECEASED, THE CONNECTICUT BANK AND TRUST COMPANY AND A. LINDSAY THOMSON, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7482–70, 3539–71. Filed August 23, 1972.

*John M. Donahue* and *Elliott C. Miller*, for the petitioners.
*Robert B. Dugan*, for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined a deficiency of $37,176.18 in the estate tax of the Estate of James L. Thomson and a deficiency of $80,156.68 in the estate tax of the Estate of Adelaide L. Thomson. The only issues remaining for decision are: (1) Whether trust income added to principal periodically from 1933 through 1966 was "transferred" to the trust after March 4, 1931, the effective date of section 2036, I.R.C. 1954, where the decedent had created the trust prior to March 4, 1931, reserving to himself the discretionary power to distribute trust income to beneficiaries or to accumulate such income and add it to principal, and the post-1931 income additions were made pursuant to such power; and (2) if so, what portion of the value of the trust is allocable to the post-1931 transfers of income and therefore includable in the decedent's gross estate under section 2036 (a) (2). The facts have been stipulated.

The petitioner in docket No. 7482–70 is the Estate of James L. Thomson, Hartford National Bank & Trust Co. and A. Lindsay Thomson, coexecutors. The petitioner in docket No. 3539–71 is the

Estate of Adelaide L. Thomson, the Connecticut Bank & Trust Co. and A. Lindsay Thomson, coexecutors. James L. Thomson died testate on July 23, 1966, and Adelaide L. Thomson, his wife, died testate on March 14, 1968. Both decedents resided in West Hartford, Conn., at the time of death. Their respective Federal estate tax returns were filed with the district director of internal revenue at Hartford, Conn., and on both returns the gross estates were valued as of the date of death. At the time of the filing of both petitions herein, the principal places of business of both Hartford National Bank & Trust Co. and the Connecticut Bank & Trust Co. were in Hartford, Conn., and the residence of A. Lindsay Thomson was in West Hartford, Conn.

On June 4, 1928, James L. Thomson ("Thomson" or the "decedent") created a trust for the benefit of his son, Alexander Lindsay Thomson, and his daughter, Jean Thomson. The trust was funded with securities then having an aggregate market value of approximately $31,237, and the City Bank & Trust Co. of Hartford, Conn., was named as trustee.

The trust instrument gave the trustee broad administrative powers over the principal of the trust. In respect of the disposition of trust income, the instrument provided, in relevant part, as follows:

The Trustee shall collect the rents, income and profits of said trust estate as the same accrue, shall pay out of said trust estate all lawful taxes and expenses chargeable against the same, and against the earnings thereof, including reasonable fees for its services as Trustee, and *during the lifetime of the Donor shall add the net income* remaining from time to time after the payment of such expenses *to the principal* of said trust, to be managed, invested, reinvested and treated in all respects as and for a part of said principal, *unless the Donor shall from time to time instruct the trustee to make payments of or from said income to the beneficiaries, or either of them, during the donor's lifetime; power to direct such earlier payment of income to the beneficiaries being expressly reserved by the donor.* [Emphasis supplied.]

The trust instrument further provided that upon the decedent's death, the principal of the trust was to be divided into two equal parts, one part for the benefit of Alexander Lindsay Thomson and the other for the benefit of Jean Thomson. The "net income" from each part was to be paid to each respective beneficiary until he or she attained the age of 30 years, at which time that beneficiary was to receive his or her respective share of the principal of the trust. If either beneficiary was already 30 years old when the decedent died, he or she was to receive half of the principal of the trust forthwith. Provision was made for other disposition in the event that either beneficiary died before receiving his or her share of the principal.

On March 14, 1933, following an adjudication of insolvency of the City Bank & Trust Co., the Probate Court for the District of Hart-

ford, Conn., appointed the Travelers Bank & Trust Co. of Hartford, Conn., as successor trustee of the Thomson trust. An inventory of the trust assets filed with the Probate Court by the successor trustee stated the aggregate value of such assets on March 15, 1933, to be $19,804.65. The Travelers Bank & Trust Co. was later acquired by Hartford National Bank & Trust Co., which was trustee at the time of the decedent's death.

The decedent never exercised his power to direct the trustee to make distributions out of trust income to either or both of the beneficiaries during the decedent's lifetime. Accordingly, all of such income was added to principal pursuant to the terms of the trust instrument. Between March 14, 1933, and July 23, 1966, the date of Thomson's death, trust income in the amount of $97,260.56 was added to principal. Federal income taxes amounting to $17,260.40 were paid by the trust during this period, with the consequence that $80,000.16 of net income had accumulated in principal by the time Thomson died. The record does not disclose whether any trust income was earned and added to principal from June 4, 1928, when the trust was created, through March 13, 1933.

No additions to the trust aside from accumulations of income were made after June 4, 1928. The trust assets were valued at $222,235.77 as of the date of the decedent's death. Since both of the beneficiaries were over 30 years old when Thomson died, the trust assets were distributed to them outright in equal shares pursuant to the terms of the trust instrument and an order of the Probate Court of Hartford, Conn., dated November 3, 1966.

No value was included in the gross estate reported on decedent's estate tax return on account of the June 4, 1928, trust, although the existence of the trust was disclosed on a schedule attached to the return. In his notice of deficiency to decedent's executors, the Commissioner determined: "that the value of .814434 of a certain trust created by the decedent on June 4, 1928—in the amount of $180,525.45—is includable in the gross estate under the provisions of Section 2036 (a) (2) of the Code." The resolution of the only remaining controversy with respect to the tax owed by the Estate of Adelaide L. Thomson depends solely on the outcome of the dispute regarding the estate of her husband.

1. *Whether income added to principal after March 4, 1931, was "transferred" after such date.*—Section 2036 (a) (2), I.R.C. 1954, requires inclusion of the value of property which has been the subject of an inter vivos transfer in trust in the settlor's gross estate where at the time of his death the settlor retains the right to designate the

persons who may possess or enjoy the income from such property.[1] *United States* v. *O'Malley*, 383 U.S. 627, 631. A discretionary power to distribute trust income or to accumulate such income and add it to principal constitutes a power to determine whether the income beneficiaries or remaindermen shall possess or enjoy the income, and it is well settled that section 2036(a)(2) requires the inclusion of both the original principal and accumulated income of a trust in the gross estate of a settlor who holds such a power at the time he dies. *United States* v. *O'Malley, supra* at 633; *Estate of Arthur J. O'Connor*, 54 T.C. 969, 973. See also *Round* v. *Commissioner*, 332 F. 2d 590, 595–596 (C.A. 1), affirming 40 T.C. 970; sec. 20.2036–1(b)(3), Estate Tax Regs. When Thomson died he was possessed of a power to decide which of the two named beneficiaries of the trust would receive the trust income, and he also retained a power to direct that trust income be accumulated and added to the principal of the trust, eventually to be distributed to the corpus beneficiaries instead of the income beneficiaries. The petitioners do not deny that such powers qualified as powers to "designate" within the meaning of section 2036(a)(2).[2]

Section 2036(b),[3] however, provides that "This section shall not apply to a transfer made before March 4, 1931." Accordingly, the Commissioner does not challenge the exclusion of a portion of the trust allocable to the securities which Thomson transferred on June 4, 1928, when the trust was created, but he does contend that a portion of the trust allocable to the trust income which was periodically added to principal from 1933 through 1966 must be included in the decedent's

---

[1] Sec. 2036 is principally directed at "Transfers With Retained Life Estate." Sec. 2036 (a), in full, provides:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[2] Nothing in the recent decision in *United States* v. *Byrum*, 408 U.S. 125, calls for a contrary conclusion, and there is no suggestion in the opinion in that case that *United States* v. *O'Malley*, 383 U.S. 627, is not still good law in this respect.

[3] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(b) LIMITATION ON APPLICATION OF GENERAL RULE.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

The joint resolution of Mar. 3, 1931, was reenacted on June 6, 1932, with minor changes, by sec. 803(a) of the Revenue Act of 1932, ch. 209, 47 Stat. 169, amending sec. 302(c) of the Revenue Act of 1926, ch. 27, 44 Stat. 9. The differences between the language of the joint resolution and the Revenue Act of 1932 are not material to the issue presented here.

gross estate. The sole remaining issue is whether such income was "transferred" before or after March 4, 1931. The Commissioner's position is that the decedent effected a transfer of income to principal each time he declined to exercise his power to order the early distribution of income to the trust beneficiaries, so that all income was transferred after 1931. The petitioners contend that the only transfer in trust occurred in 1928, when the trust was created. We agree with the Commissioner.

Section 2036(b) represents the final legislative contribution to a protracted history of controversy between the Supreme Court and the Congress respecting the treatment of trusts with retained life estates under the Federal estate tax provisions. The first Federal estate tax law was enacted as title II of the Revenue Act of 1916, ch. 463, 39 Stat. 756. Section 202(b) of that Act provided for the inclusion in a decedent's gross estate of inter vivos transfers "intended to take effect in possession or enjoyment at or after his death," because such transfers were no more than substitutes for testamentary dispositions. The "possession or enjoyment" clause was carried forward in subsequent estate tax statutes [4] and was reenacted in section 811(c) of the Internal Revenue Code of 1939. The clause was not a new one. It had appeared in the death tax statutes of most of the States, the first of which was enacted as early as 1826. Moreover, State courts construing it held "with what appear[ed] to be complete unanimity" that it covered transfers with retained life estates, and the Treasury Department consistently adhered to this interpretation until 1930, when the Supreme Court decided the case *May v. Heiner*, 281 U.S. 238. *Commissioner v. Estate of Church*, 335 U.S. 632, 637–639. *May v. Heiner* held that a transfer in trust with the trust income to be paid to the settlor's husband for his lifetime, and thereafter to the settlor for her lifetime, was not intended to take effect in possession or enjoyment at the settlor's death and therefore not includable in her gross estate, since title to the trust property had passed from the decedent upon the creation of the trust. Within a year, the Court reaffirmed *May v. Heiner* in three per curiam decisions [5] which held that the statute failed to reach transfers with retained life estates, "thus upsetting the century-old historic meaning and the long standing Treasury interpretation of the 'possession or enjoyment' clause." *Commissioner v. Estate of Church, supra* at 639.

---

[4] Sec. 402(c), Revenue Act of 1918, ch. 18, 40 Stat. 1057; sec. 402(c), Revenue Act of 1921, ch. 136, 42 Stat. 227; sec. 302(c), Revenue Act of 1924, ch. 234, 43 Stat. 253; sec. 302(c), Revenue Act of 1926, ch. 27, 44 Stat. 9.

[5] *Burnet v. Northern Trust Co.*, 283 U.S. 782; *Morsman v. Burnet*, 283 U.S. 783; *McCormick v. Burnet*, 283 U.S. 784. Unlike *May v. Heiner*, the life estates reserved by the settlors were not preceded by any intervening life estates in other persons.

Congress responded to the three per curiam decisions with dramatic swiftness, unanimously passing a joint resolution the following day, March 3, 1931, which added to the estate tax statute a clause which made it clear that transfers under which the grantor retained a life estate or a right to designate the beneficiaries were to be included in the grantor's gross estate. It was approved by the President on the same day, and thus became law on March 3, 1931. Joint Resolution to Amend Section 302 for the Revenue Act of 1926, ch. 454, 46 Stat. 1516. The substance of the joint resolution is now contained in section 2036(a) of the 1954 Code. Seven years later, the Supreme Court sustained the constitutionality of the 1931 amendment in *Helvering* v. *Bullard*, 303 U.S. 297, but also held, in *Hassett* v. *Welch*, 303 U.S. 303, that it applied only "prospectively," in the sense that pre-1931 transfers in trust with retained life estates continued to be outside the scope of the statute notwithstanding that the settlor died thereafter.[6] But in 1949, following a series of decisions which had eroded the foundation underlying *May* v. *Heiner*, the Court overruled *May* v. *Heiner* and held under section 811(c), I.R.C. 1939, that a 1924 transfer in trust with a retained life estate was, after all, "intended to take effect in possession or enjoyment" at the settlor's death. *Commissioner* v. *Estate of Church*, *supra*. Consequently, under *Church*, a transfer with a retained life estate was includable in a decedent's gross estate under the original "possession or enjoyment" clause without the necessity of relying upon the 1931 amendment, and accordingly it became unnecessary to consider, as was done in *Hassett* v. *Welch*, whether the transfer was made prior to the time that the 1931 amendment became law.

Section 2036(b) represents the congressional response to the *Church* decision in respect of pre-1931 transfers. Notwithstanding that the three per curiam decisions which reaffirmed *May* v. *Heiner* were described in 1931 as having an impact on Congress "almost like a bombshell" (remarks of Senator Smoot, Chairman of the Finance Committee, 74 Cong. Rec. 7078), the Senate Finance Committee declared in 1949 that "Some persons might have surrendered their life estates after 1931 had they not relied on the interpretation of the estate tax

---

[6] The joint resolution had amended sec. 302(c) of the Revenue Act of 1926 by providing explicitly that the "possession or enjoyment" clause included transfers with retained life estates, but sec. 302(h), which related to transactions and interests giving rise to tax by virtue of the preceding subsections, was left unamended. Sec. 302(h) provided that "Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act." Notwithstanding that Congress had not "otherwise specifically provided" in respect of its amendment to subdivision (c) in its joint resolution of Mar. 3, 1931, the Supreme Court in *Hassett* v. *Welch*, for considerations outlined by it, construed the amended statute as being inapplicable to a pre-1931 transfer made by a person who died in November 1932.

law which has now been overruled * * * in the Church case" and that "after all of these years these persons are entitled to rely upon the long standing interpretation in *May* v. *Heiner*." S. Rept. No. 831, 81st Cong., 1st Sess., pp. 7–8 (1949).

Congress therefore undertook to limit the effect of the *Church* decision in respect of transfers made prior to the 1931 amendment. Section 7(b), Technical Changes Act of 1949, ch. 720, 63 Stat. 891, as amended by section 608, Revenue Act of 1951, ch. 521, 65 Stat. 452, provided that the joint resolution of March 3, 1931, as then embodied in slightly altered form in section 811(c) of the 1939 Code, would not apply to transfers made prior to March 4, 1931, but only in the case of a decedent dying prior to January 1, 1951. Although the *Church* decision thus continued to govern pre-1931 transfers in respect of decedents dying after 1950, section 8 of the Technical Changes Act, in substance, permitted tax-free releases of life estates or rights of designation which had been reserved under such pre-1931 transfers. Finally, believing "that the effect of the Church decision should be eliminated in all cases to which it was applicable" (H. Rept. No. 894, 83d Cong., 1st Sess., p. 7 (1953) ; S. Rept. No. 685, 83d Cong., 1st Sess., p. 8 (1953)), Congress passed the Technical Changes Act of 1953, ch. 512, 67 Stat. 615, section 207(a) of which deleted the limitation in the 1949 amendment to cases involving decedents dying prior to January 1, 1951, and left the statute substantially identical to section 2036(b) of the 1954 Code as it reads today.

Plainly, in enacting section 2036(b), Congress was endeavoring to protect the interests of those who had created trusts prior to the enactment of the joint resolution of March 3, 1931, and who might thereafter have reasonably relied upon the interpretation placed upon the "possession or enjoyment" clause in *May* v. *Heiner* (and the three per curiam decisions which followed it). However, Congress made section 2036(a) inapplicable not to "trusts created" before March 4, 1931, but to "tranfers made" before that date. The word "transfer" in section 2036(b) surely does not refer exclusively to the creation of a trust. It was well settled prior to the enactment of section 2036(b) that where a decedent after 1931 conveyed additional property to a trust he had created prior to 1931, such additional property was "transferred" after the effective date of the joint resolution, with the consequence that the portion of the trust allocable to the post-1931 transfer was includable in his gross estate. See *Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142, 145, 146 (C.A. 1), affirming in this respect *Estate of Milton J. Budlong*, 7 T.C. 756, acq. 1947–1 C.B. 1; *Security-First Nat. Bank of Los Angeles, Executor*, 36 B.T.A. 633, 637–638, appeal dismissed 99 F. 2d 1000 (C.A. 9), nonacq. sub nom. *William*

*M. Young*, 1938–1 C.B. 61; cf. *Estate of Charles Curie*, 4 T.C. 1175, 1181–1182, overruled in another respect by *Estate of Debe W. Hubbard*, 26 T.C. 183, 190, which in turn was reversed 250 F. 2d 492 (C.A. 5). Neither the language nor anything in the history of section 2036(b) to which our attention has been directed raises any doubt that these cases continue to be good law.

The post-1931 additions of income to the Thomson trust were unlike the transfers made in the above-cited cases, however, in that trust income was added to principal without any affirmative action on Thomson's part after 1931, such income never "belonged" to the decedent, and it was not property conveyed to the trust from an external source but rather was generated by property previously transferred to the trust. Although the accumulation clause in the trust instrument provided for income to be added to principal unless the decedent acted affirmatively to instruct the trustee to distribute such income, we think it is a matter of no consequence that the exercise of the settlor's discretion to add the income to corpus could be achieved by such inaction rather than by an affirmative act; to hold otherwise would permit form rather than substance to govern, contrary to established principles in this field. Cf. *Estate of Spiegel* v. *Commissioner*, 335 U.S. 701, 705; *Estate of Anna Hart Kinney*, 39 T.C. 728, 731, acq. 1964–1 C.B. 4. The addition of income to principal by reason of Thomson's passive choice not to order it to be distributed was no different in practical effect from the accomplishment of the same objective by his compliance with the terms of a hypothetical instrument which required his positive action.

Nor do we think that Thomson could not have made a "transfer" of accumulated income after 1931 because he did not "own" such income or because the source of such income was internal to the trust. In view of the decision of the Supreme Court in *United States* v. *O'Malley*, 383 U.S. 627, these circumstances cannot be said adequately to distinguish the cases cited above that held that post-1931 additions to pre-1931 trusts were covered by the 1931 joint resolution although the original corpora were not. E.g., *Industrial Trust Co.* v. *Commissioner, supra*, cited with approval for a different but related proposition in *O'Malley*, 383 U.S. at 631–632. The *O'Malley* case held that where the settlor of several irrevocable trusts had retained in each instance the discretionary power to accumulate or distribute trust income, the income which had accumulated in the trust pursuant to this power had been "transferred" to trust principal and was includable in the settlor's gross estate under section 811(c)(1)(B)(ii), I.R.C. 1939 (the predecessor of sec. 2036(a)(2), I.R.C. 1954). To be sure, all of the trusts involved in the *O'Malley* case were created after March 3, 1931, but the pivotal ground on which that decision turned is equally

applicable here. Precisely the same arguments in respect of the source of the income and the decedent's lack of ownership of such income at the time it was added to principal herein were applicable in the *O'Malley* case, where the Court stated (383 U.S. at 632–633):

All income increments to trust principal * * * [were] traceable to Fabrice [the decedent] himself, by virtue of the original transfer and the exercise of the power to accumulate. Before the creation of the trusts, Fabrice owned all rights to the property and to its income. By the time of his death he had divested himself of all power and control over accumulated income which had been added to the principal, except the power to deal with the income from such additions. *With respect to each addition to trust principal from accumulated income, Fabrice had clearly made a "transfer"* as required by § 811(c)(1)(B)(ii). Under that section, the power over income retained by Fabrice is sufficient to require the inclusion of the original corpus of the trust in his gross estate. The accumulated income added to principal is subject to the same power and is likewise includable. *Round* v. *Commissioner*, 332 F. 2d 590; *Estate of Yawkey* v. *Commissioner*, 12 T.C. 1164.⁵ [Fn. omitted. Emphasis supplied.]

Thus, since Thomson (like Fabrice in the *O'Malley* case) had owned the assets which generated the income which he caused to be added to principal, it is immaterial that he did not "own" such income at the time such additions were made. Just as each item of income added to corpus in *O'Malley* constituted a separate "transfer" the various post–1931 additions of income to corpus herein represented separate "transfers" at the time of such additions, and such post–1931 "transfers" therefore were not subject to section 2036(b). Rather, such "transfers" were covered by section 2036(a)(2), for the income thus added to corpus at the decedent's discretion could in turn generate additional income, and such additional income would be subject to precisely the kind of control by the decedent which is contemplated by section 2036(a)(2). Thus, income which remains in a trust at the decedent's discretion and which may be the source of still further income is no different in this respect from property added to a trust after its creation from an external source. In either case the decedent's previously retained right to designate the persons who shall possess or enjoy the income from the added property attaches to such property, but not until the decedent through his dominion over the property has caused it to become part of principal. That the power to designate was originally retained in an instrument executed prior to 1931 is of no greater consequence in the case of income accumulations than it is in the case of freshly conveyed property. See *Industrial Trust Co.* v. *Commissioner, supra*; *Security-First Nat. Bank of Los Angeles, Executor, supra*; cf. *Estate of Charles Curie, supra*. In these cases and, we hold, in the present case, the time at which property was added to principal and became subject to the decedent's right of designation—not the time at which the trust was

created and the power retained—was the critical moment at which a "transfer" occurred, for *O'Malley* makes it clear that the addition of trust income to principal where the settlor had retained the discretionary power to accumulate or distribute is itself the equivalent of a fresh "transfer" of property to the trust.

Petitioners, however, urge that the decedent made but a single transfer, when the trust was created, and cannot be held to have made any transfers thereafter in respect of income which was generated by the trust and permitted by the decedent to be added to corpus. But that was the very argument made by the dissenters in *O'Malley*, who contended that the decedent therein "made a transfer" only of the original corpus, and never "made a transfer" of the income which was thereafter accumulated at the discretion of the settlor. 383 U.S. at 635. The majority refused to accept that position and concluded that the decedent had in fact "made a transfer" each time income was added to corpus. The identical situation is present here: The decedent herein similarly "made a transfer" each time income was added to corpus. It does not matter that the original corpus was transferred prior to March 4, 1931, for the Commissioner seeks to include in the gross estate only those "transfers" made thereafter, i.e., only the accumulations of post–1931 income which, subject to the decedent's unfettered retained discretion, could either be distributed currently or added to corpus. He could have exercised his discretion to distribute the income and could thus have removed it from his gross estate. Instead, as in *O'Malley*, he chose to permit the income to be accumulated, and each such accumulation represented a "transfer" under the statute just as it did in *O'Malley*. We accordingly must sustain the Commissioner in respect of such "transfers" as were made after 1931.

In support of their position, the petitioners have cited a series of cases holding certain pre–1931 trusts with retained life estates to be excludable from decedents' gross estates under section 2036(b) : *Commissioner* v. *Canfield's Estate*, 306 F. 2d 1 (C.A. 2), affirming 34 T.C. 978 (property was "transferred" in trust when a trust was created and legal title was irrevocably transferred, notwithstanding that such transfer was not "complete and irrevocable" by reason of a testamentary power of appointment retained by the decedent until 1942) ; *Commissioner* v. *Ridgway's Estate*, 291 F. 2d 257 (C.A. 3), affirming 33 T.C. 1000 (value of a trust created in 1930 could not be included in a decedent's gross estate where the decedent reserved a power to make changes with respect to the disposition of principal or income, but not so as to favor himself or his estate, and did not relinquish such power until 1944) ; [7] *Estate of Newcomb Carlton*, 34 T.C. 988, re-

---

[7] See also *Florida National Bank of Jacksonville, Fla.* v. *United States*, 221 F. Supp. 861 (E.D. Pa.), reversed on other grounds 336 F. 2d 598 (C.A. 3), certiorari denied 380 U.S. 911.

versed on other grounds 298 F. 2d 415 (C.A. 2) (value of a trust was not includable in a decedent's gross estate although the decedent retained powers to alter, amend, or revoke the trust until after 1931) ; *Estate of Robert J. Cuddihy*, 32 T.C. 1171 (transfer was "made" in 1926 when a trust was created and legal title was conveyed to the trustee, not in 1946 when the decedent released a power to terminate the trust). The question in all of these cases was whether property placed in trust before 1931 had been transferred prior to the enactment of the joint resolution, where the pre-1931 transfers were allegedly "incomplete" by reason of certain powers the respective decedents had retained over the original corpus, and which they did not release until after 1931. *None of the cases relied upon by the petitioners dealt with the issue of includability of post-1931 additions to a pre-1931 trust, which is the sole issue presented herein.* We note, too, that the theory on which these cases are based has recently been questioned in *Commissioner* v. *Estate of Talbott*, 403 F. 2d 851 (C.A. 4) (section 2036(b) applies only to trusts which were irrevocable on March 4, 1931), reversing 48 T.C. 271, certiorari denied 393 U.S. 1022, following *Smith* v. *United States*, 134 Ct. Cl. 136, 139 F. Supp. 305, and *Studebaker* v. *United States*, 195 F. Supp. 841 (N.D. Ind.), modified 211 F. Supp 263. See also *Pope* v. *United States*, 296 F. Supp. 17 (S.D. Calif.), and *Savage* v. *United States*, 331 F. 2d 678, 680, fn. 1 (C.A. 2) (dictum). Since we think that the cases relied upon by petitioners are distinguishable from the present case, it is unnecessary for us to express a preference either for the theory they adopted or the contrary theory of the *Talbott* line of cases.

2. *Portion of the value of the trust allocable to post-1931 transfers.*—The value of the assets in the Thomson trust as of the date of the decedent's death was $222,235.77. The Commissioner argues on brief that $178,135.97 of this value is includable in the decedent's gross estate,[8] and the petitioners submit that only $153,664.92 is includable. For reasons that are different from those relied upon by petitioners, we accept their figure.

Plainly, the portion of the value of the trust allocable to post-1931 transfers must equal the net amount of trust income which was added to principal after March 3, 1931, and which was reflected in the assets owned by the trust at the decedent's death, plus the net amount of unrealized appreciation at the time of Thomson's death on whatever trust assets were purchased with or traceable to such income. There is no dispute between the parties that all of the net income was reflected

---

[8] The Commissioner apparently no longer seeks to defend his initial determination that $180,525.45, which was based on an unexplained factor of 0.814434, is the includable value of the Thomson trust. His present position on brief is based on a stated factor of 0.801563.

in the trust corpus at the date of death. However, the net amount of unrealized appreciation allocable to post-1931 transfers cannot be computed with any mathematical precision from the facts disclosed in the record. It would be desirable to compute the unrealized appreciation on the assets in the trust at the decedent's death on a security-by-security basis and then to trace the source of the individual securities to either the original corpus or accumulated income, making appropriate allocations wherever specific tracing was impossible. This cannot be done without a detailed accounting of the trust, and none has been made available to us.

The parties have attempted to make an allocation by resorting to a formula. They have multiplied the date-of-death value of the trust ($222,235.77) by a fraction, the numerator of which is the dollar amount of the net trust income which was transferred to principal after March 3, 1931 ($80,000.16), and the denominator of which is the aggregate value of all transfers to the trust (the value of transfers made prior to March 4, 1931, plus $80,000.16). They disagree as to the value of the pre-1931 transfers which should be used in computing the denominator. The petitioners maintain that $31,237—the value of the originally transferred assets as of the date when the trust was created—is the correct figure. The Commissioner contends that the amount of $19,804.65—the value of the assets in the trust as of March 15, 1933—should be used, since all of the trust income which the record shows to have been added to principal was accumulated after this date.

We think that the positions of the respective parties share a common flaw. The formula they have used depends on an invalid assumption: that the appreciation in value of both the original corpus and the income accumulations took place over identical periods of time. This is plainly not the case. The record shows that some trust income was transferred to principal in every year from 1933 through 1966, inclusive, and the great bulk of such income was accumulated in the later years of the trust. Even assuming that all of such income was promptly converted into appreciable property at the time it was added to principal and that one average rate of appreciation might be applied to all the commingled appreciable property in the trust at any given moment, it is apparent that the original corpus and the various income additions began to appreciate in value at different points of time during the existence of the trust, and it is all but certain that the average rate of appreciation—or depreciation—fluctuated greatly from the time the trust was created in 1928 until its assets were distributed in 1966.

We might have been able to overcome these difficulties with reason-

able accuracy if we knew the average values of the trust for each year of its existence or the average rates of appreciation for each such year, but the record is deficient in this respect. In the circumstances, we are compelled to do the best we can with the materials before us. Based upon our evaluation of the record, which contains a schedule of the net amount of income added to corpus each year beginning March 14, 1933, and ending July 23, 1966, it is our best judgment that the total amount in the trust at the date of death allocable to post-1931 income accumulations was not in excess of petitioners' figure, $153,664.92, and we so find as a fact. We therefore accept petitioners' figure.

*Decisions will be entered under Rule 50.*