**ESTATE of James L. THOMSON et al.,
Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**ESTATE of Adelaide L. THOMSON et al.,
Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 10, Docket 73–1170.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1973.

Decided March 27, 1974.

John M. Donahue, Hartford, Conn. (Richard W. Tomeo, Robinson, Robinson & Cole, Hartford, Conn., on the brief), for appellants.

Richard Farber, Washington, D. C. (Scott P. Crampton, Ernest J. Brown,

---

Loring W. Post, Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

These are consolidated appeals from determinations by the Tax Court of deficiencies in the estate tax of the estate of James L. Thomson, who died on July 23, 1966, and of the estate of Adelaide L. Thomson, his wife, who died on March 14, 1968.

The appeal of the estate of Adelaide L. Thomson is based upon the claim of deficiency arising out of an increase in the value of a marital deduction trust with respect to which Mrs. Thomson had a power of appointment. The claimed increase in the value of the marital deduction trust arises only out of the addition to the husband's estate of the unreported accumulated income in the husband's taxable estate.

The pertinent facts have been established by stipulation.

On June 4, 1928, James L. Thomson created a trust for the benefit of his son, A. Lindsay Thomson, and his daughter, Jean Thomson. The City Bank and Trust Company of Hartford, of which appellant Hartford National Bank and Trust Company is the successor, was the designated trustee. The corpus of the trust consisted of securities then having a market value of $31,237. The trust instrument directed that income be accumulated and added to principal during Thomson's lifetime unless Thomson directed that the income payments be made to either or both of the beneficiaries, the power to make such direction being expressly reserved by the donor.[1] Thomson never exercised his power to distribute trust income; accordingly, all installments of income were added to principal.

In accordance with the terms of the trust instrument at the decedent's death, the trust assets, then valued at $222,235.77, were distributed in equal shares to the beneficiaries.

The deficiency determined by the Tax Court arises from the failure to include in the taxable estate of the decedent Thomson, in accordance with section 2036(a) of the Internal Revenue Code of 1954, the accumulations of income added to the corpus of the trust.

Section 2036(a) provides, in relevant part, as follows:

> "*General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer . . . by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
>
> "(1) the possession or enjoyment of, or the right to the income from, the property, or
>
> "(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

1. With respect to the distribution of trust income, the trust instrument reads as follows:

"The Trustee shall collect the rents, income and profits of said trust estate as the same accrue, shall pay out of said trust estate all lawful taxes and expenses chargeable against the same, and against the earnings thereof, including reasonable fees for its services as Trustee, and *during the lifetime of the Donor shall add the net income* remaining from time to time after the payment of such expenses *to the principal* of said trust, to be managed, invested, reinvested and treated in all respects as and for a part of said principal, *unless the Donor shall from time to time instruct the trustee to make payments of or from said income to the beneficiaries, or either of them, during the donor's lifetime; power to direct such earlier payment of income to the beneficiaries being expressly reserved by the donor.*" [Emphasis supplied.]

Application of section 2036(a) is limited by section 2036(b):

> "*Limitation on application of general rule.*—This section shall not apply to a transfer made before March 4, 1931 . . . ."

The appellants' position is that the "transfer" of assets into the trust was complete when the trust was created in 1928 and that the post-1931 income accumulations are not transfers of assets within the meaning of section 2036(a).

We reject this position and affirm the decision of the Tax Court.

It is not necessary to repeat here the history of section 2036(a) and its predecessor sections. Succinct statements of the events leading up to and following the enactments of sections 2036(a) and (b) are included in the opinion of the Tax Court in this case, 58 T.C. 880, and in this court's opinion in Commissioner of Internal Revenue v. Estate of Canfield, 306 F.2d 1 (2d Cir. 1962). A detailed history of section 2036(a) is found in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 634–640, 69 S.Ct. 322, 337, 93 L.Ed. 288 (1949). It is sufficient for present purposes to state that the substance of section 2036 (a) was adopted in order to counteract the effect of May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), which held that transfers of property to a trust were not to be included in the taxable estate of the grantor even though he retained a life estate or the power to appoint a beneficiary.

Under Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938), the legislation reversing May v. Heiner was held to be prospective in effect, that is, it controlled only transfers made after the date of the adoption of the legislation, to wit, March 3, 1931.

When, in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288 (1949), the Supreme Court overruled May v. Heiner, it became necessary again to amend the Code in order to protect the expectations of persons who had relied on May v. Heiner by not surrendering life estates created by pre-1931 trusts. S.Rep.No.831, 81st Cong., 1st Sess. (1949), U.S.Code Cong.Service, p. 2172. Accordingly the substance of the present section 2036(b) was enacted.

Appellants seek to persuade us that the accumulations which were added to the principal of the trust after March 3, 1931, were "transferred" to the trust when the trust was set up in 1928 because, as appellants argue, the income was "internally generated" and not added from external sources. But even if we were inclined, and we are not, to classify income received by the trust over the years after 1931 as "transferred" to the trust at the time of its establishment, we would be prevented from doing so by the clear authority of United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966).

In *O'Malley* the trust instruments provided that annual income from five irrevocable trusts established by the settlor was to be distributed to named income beneficiaries, unless the trustees exercised discretion given by the instrument to accumulate income. The Court held that the entire corpus of the trust was includible in gross estate, that both the original transfer into trust and subsequent settlor-directed accumulations were "transfers" as that term is used in section 811(c)(1)(B)(ii) of the 1939 Code (the current section 2036(a)(2)).

Under *O'Malley,* "transfer", as the term is used in section 2036(a)—and, under our analysis, as it is used in section 2036(b)—includes the post-1931 accumulations of income in the Thomson trusts. In *O'Malley,* the Supreme Court held that the decedent transferred income accumulations to trust principal because he had

> "exercised his retained power to distribute or accumulate income, choosing to do the latter and thereby adding to the principal of the trusts. . . . With respect to each addition to trust principal from accumulated income, Fabrice [the decedent]

had clearly made a 'transfer' as required by [section 2036(a)(2)]." 383 U.S. at 632–633, 86 S.Ct. at 1126–1127.

In the instant case, the Thomsons retained the power to distribute income to the beneficiaries or to accumulate it in principal. They chose to do the latter. The Thomsons had no less control of the disposition of income than Fabrice. It is of no importance that in the event of silence the Thomson trusts accumulated income while the Fabrice trust paid out to beneficiaries. And it is of no importance that the Thomson trusts were created prior to 1931, while the Fabrice trusts were created in 1937 and 1938, since the Commissioner seeks to include only post-1931 accumulations in the Thomsons' gross estate.

Under the language itself of sections 2036(a) and (b), as well as the purposes of adoption of these statutes, these accumulations were transfers which took place after March 3, 1931, exactly as were the accumulations in *O'Malley*.

The Tax Court's determinations of deficiencies in the estate taxes of the appellant estates are affirmed.

MOORE, Circuit Judge, (dissenting):

I dissent.

In my opinion, Congress, by enacting Section 7(c) of the Technical Changes Act of 1949 (Act of October 25, 1949), Ch. 720, 63 Stat. 891, the predecessor to the current § 2036(b), 26 U.S.C. § 2036(b) (1970), intended to allow settlors of pre-1931 trusts to rest secure in the knowledge that the legal consequences that their trusts would incur would be determined with reference to 1931 law.

The purpose of that section was to prevent undue hardship to settlors who had written their instruments according to one legal principle only to find them about to be judged by another harsher one. It is certain that Congress intended to protect settlor-reserved life estates, for the duration of those estates, from the new theories of estate taxation announced in the Joint Resolution of Congress, issued on March 3, 1931. That pronouncement was prospective, but was made retroactive by Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288 (1949).

It was for the purpose of countering the *Church* rule that this section was passed, and it seems somewhat strange to hold, as the majority does here, that there was no intent to extend similar protection to a far lesser settlor-reserved power, likewise threatened by *Church*.

In this case settlor-decedent, Thomson, set up a trust in 1928 for the benefit of his two children. The trust provided that the income of the corpus was to be accumulated unless the settlor exercised a reserved power to direct distribution on an annual basis, *i. e.*, that the income be paid to either or both of the beneficiaries. Upon the death of the settlor when the power ended, the trust was to be split into two equal trusts which were to continue until the beneficiaries each reached the age of thirty when each would be given the principal from one of the two trusts. The settlor never exercised his power to pay out the income and, thus, in fact, all income was added to principal. The IRS sought to include the value of the income accumulated since March 3, 1931 [the date of the Joint Resolution of Congress passed in reaction to May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930)] within decedent's estate and that of his spouse under § 2036(a) of the Act, 26 U.S.C. § 2036(a).

§ 2036(a) states:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer . . ., by trust or otherwise, under which he has retained for his life . . . (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the

right . . . to designate the persons who shall possess or enjoy the property or the income therefrom.

There is no contention that this section would not include the reserved power in question had the trust been entered into after March 3, 1931. The present controversy is based on § 2036(b) which excludes from the scope of § 2036(a) "all transfers made before March 4, 1931."

The history of § 2036(b) is somewhat intricate, and therefore, although it has been laid out with thoroughness elsewhere, and at the expense of some repetition of the majority's opinion, some backdrop must be laid here.

May v. Heiner, *supra,* was decided on the basis of § 402(c), Revenue Act of 1918, which made includible in a decedent's estate all property:

> . . . to the extent of any interest therein of which decedent has at any time made a transfer, or with respect to which he has at any time created a trust . . . intended to take effect in possession or enjoyment at or after his death . . . .

The *May* case, which involved a life estate, held that retained life interests, terminating as they must upon settlor's death, were not reachable under § 402 (c) because the donee had received all he was to receive, the remainder interest, before the donor's death.

The *May* case and its limitation of the gross estate, provoked Congress to provide a clarification. On March 3, 1931 the section in question was amended to include:

> . . . a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom.

However, it is clear that this legislation was intended and it was eventually held to apply only prospectively, Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938), so that the *May* rule continued to be applicable to interests retained under pre-1931 transfers.

In 1949, however, the Supreme Court did what Congress had not done. In Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288 (1949) the *May* interpretation of what was meant by "intended to take effect in possession or enjoyment at or after . . . death . . . ." was overturned. The *Church* decision directly attacked the contention that to reverse *May* would upset previous expectations.

> In view of the struggle of the Treasury in this tax field, the variant judicial and Tax Court opinions, our opinion in the *Hallock* case [Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604], and others which followed, it is not easy to believe that taxpayers who executed trusts prior to the 1931 joint resolution felt secure in a belief that May v. Heiner gave them a vested interest in protection from estate taxes under trust transfers such as this one.

335 U.S. at 647, 69 S.Ct. at 330.

Congress did not agree and enacted the counterpart to what is currently § 2036(b) which prevented *Church* from reaching back of March 4, 1931 and sweeping the *May* rule away to extinction. The Senate Committee Report on that section quoted approvingly a passage, S.Rep.No.831, 81st Cong., 1st Sess. (1949) at p. 7, U.S.Code Cong.Service, at p. 2179, from Mr. Justice Reed's dissent in *Church*:

> In reliance upon a long-settled course of legislative and judicial construction, donors have made property arrangements that should not now be upset summarily with no stronger reasons for doing so than that former courts and the Congress did not interpret the legislation in the same way as this Court now does.

335 U.S. at 652–653, 69 S.Ct. at 338.

The Report continued:

> In the joint resolution of March 3, 1931, Congress created a new estate tax rule with respect to transfers after March 3. It left unchanged the rule in effect for transfers before that date. It is the opinion of your committee that the old rule should have been continued in effect with respect to such transfers until changed by legislation. Since the rule has been changed by the Supreme Court in the *Church* opinion, your committee believes that the Congress should act to restore the estate tax law to what it was prior to the *Church* opinion.

S.Rep.No.831, 81st Cong., 1st Sess. (1949) at p. 7, U.S.Code Cong.Service, at p. 2180.

Since the Report does not specifically mention interests other than life estates, it should be noted that both the *May* and *Church* cases dealt with retained life estates. Therefore, it is not surprising that the range of retainable lesser powers were ignored in both decisions and in the Congressional Report. However, it is clear that both *May* and *Church* did intend to carry the whole range of reserved interests along with them on their conflicting paths, as did § 2036(a) and the Joint Resolution. Thus, it is likely that Congress, in its expressed intent to allow continued reliance on the pre-1931 law, meant to include the lesser powers as well.

The Appellee and the court below apparently concede this inclusive quality of § 2036(b). They did not seek to include either the corpus or the increments added to the corpus up to March 3, 1931. They, therefore, must be of the opinion that the power reserved by the settlor had no estate tax consequences at the time of the trust's making. If this were not so, the corpus and the entire increment would be includible in decedent's estate. This concession, in turn, must be based on the supposition that § 2036(b) protected not only retained life estates from the sweep of *Church* but also all other lesser retained life interests and powers. Appellee's contention, however, is that each non-exercise of the power after March 3, 1931 would have the effect of swelling the corpus and therefore constituted an additional "transfer" for the purposes of § 2036(a), thereby including each increment in Appellants' gross estate.

Appellants argue that Congress intended, by the passage of § 2036(b) to exclude the increments which arise from principals which are themselves excludible. This is based on the reasoning that if what was reserved had no estate tax consequences at the time of its reservation; and since Congress, by § 2036(b) as shown by the Senate Report on the bill, *supra*, intended draftsmen of pre-1931 instruments of this nature to continue to rely on the applicability of pre-1931 law; a transfer complete when made should not be made open to new tax consequences without a clearly changed Congressional intent.

The difficulty in this case arises from the fact that settlor did not retain the maximum control that he could over his transferred property short of the freehold interest that would have included the property in his estate. Rather he retained what seemed at the time a very minor power—the ability for his life to pay the income to either or both of the remaindermen or in the alternative to accumulate it for the benefit of the same remaindermen. It seems unlikely that Congress intended to protect the maximum retained interest, and yet, even though the same rationale would apply, expose the lesser interests to the full rigors of the newly changed law.

In short, the settlor had parted with any and all interest of his own in the trust and the proceeds of the trust. He was not giving its income on an annual basis—he merely reserved the power to declare the recipients from a highly limited class. In their respective searches for the correct gloss for § 2036(b), the court below and the majority here placed great weight on United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966). In that case the

settlor of five post-1931 trusts reserved a power similar to that under consideration here. At issue was whether income accumulated by exercise of the power was includible in settlor's estate under § 2036(a). It was held that this increment to the corpus had been transferred by the settlor and therefore was taxable to him. The majority see *O'Malley* as "clear authority" that income received by the trust over the years after 1931 was not "transferred" to the trust at the time of its establishment. The majority then submit that if "transfer" is to be interpreted one way in § 2036(a) [*O'Malley*], it is reasonable to interpret it similarly in § 2036(b) [the present case]. However, to interpret "transfer" in the fashion suggested would be contrary to the very purpose of § 2036(b) —to allow pre-1931 settlors to rely on the law extant on the day before the Joint Resolution. The majority agree that pre-1931 law would have viewed the transfer as complete for estate tax purposes. They probably would agree that if the settlor retained a life estate and released part of it year by year to the remaindermen, he would not now suffer any adverse estate tax effects. Yet they argue that because the settlor gave away more, because he retained less control over his property, his estate must pay an increased tax. Further, I do not see *O'Malley* as such a clear precedent in the majority's favor. *O'Malley* concerned the question of how much was transferred; it did not face, and indeed it did not need to face, the question of when the transfer was made. Here it is the other half of the definition of transfer that must be considered. *O'Malley* is a reasonable decision in light of the policy expressed in § 2036(a). But here is faced a question of timing, not amount. Such a question could not have been raised in *O'Malley* as it dealt solely with post-1931 transfers. Indeed this question of timing is one that could only have relevance to a case arising under § 2036(b). Thus, it is with reference to the Congressional intent embodied in that section that the proper meaning of "transfer" in this instance must be determined.

Quite apart from *O'Malley*, of course, there is a certain conceptual congeniality in seeing a new fresh transfer each time interest accrues in the trust account. The majority state that even without *O'Malley* they are not inclined to view each added increment as part of the original transfer. However, within the narrow realm of the estate tax, there may be some merit to such a conclusion. In Commissioner of Internal Revenue v. Canfield's Estate, 306 F.2d 1 (2d Cir. 1962), decedent, in 1919, set up a trust, reserving to herself a life estate and making the remainder subject to a general testamentary power of appointment which she also retained. In 1942 she released the power of appointment. The Commissioner contended that she had transferred property to the takers in default in 1942—property in which she had retained a life estate, and therefore the corpus should be taxable under § 2036(a). This court disagreed, holding that the transfer occurred when the legal title passed—1919 according to 1919 law—and therefore the decedent's estate should be allowed the protection of § 2036(b) with regards to the corpus. This was not a novel pronouncement. Commissioner of Internal Revenue v. Ridgeway's Estate, 291 F.2d 257 (3rd Cir. 1961); Estate of Cuddihy, 32 T.C. 1171 (1959). To be sure *Canfield* is distinguishable on its facts from the case at hand but what is not so readily distinguishable is the willingness of this court in that case to consider a transaction under § 2036(b) in light of the law extant at the time of the transaction. Such a role is generally the proper one for the courts in the trusts and estates realm, for otherwise as was done in *Church*, we may destroy careful planning of taxpayers who relied on what was at the time of their planning established law. United States v. Byrum, 408 U.S. 125, 135, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972). Usually it is preferable to depend on Congress to weigh the pros and cons of retroactive change where

there has been general reliance on prior law and where such reliance cannot readily be altered. In the current case the settlor made a transaction that was complete when made for estate tax purposes. Later judicial decisions conspired to unravel his transfer. Thus it would seem reasonable, in light of Congressional intent, and as interpreted by this court in *Canfield*, to look at the reserved power in the light of the law as it was in 1931 and tie up the parcel that *Church* had unravelled.

Accordingly, I would reverse the decision of the Tax Court.